O'GORMAN, RINO FERNANDEZ APPEARING FOR APPELLANCE, CHARLES MAHER APPEARING FOR APPELEE. Good morning. Good morning, Your Honors. Would you like to reserve some time for rebuttal, Mr. Fernandez? Five minutes, please. Okay. Please go ahead. May it please the Court, Rino Fernandez for Appellants, CLC Compliance, Inc., and Pacific Equities, LLC. This is an appeal about whether summary judgment can be entered prior to discovery and in the face of conflicting evidence in the moving papers. And the short answer is no, it cannot. This is an action for intentional fraudulent transfer where the key issue is the debtor's intent. The problem we have here is we have a debtor who says different things at different times. It is very easy to picture her defending her own good intentions in a deposition or on the stand or, at minimum, contradicting herself. But did she actually contradict herself? Yes. Tell us where on the record that conflicting evidence is. ER 19, page 48, is a letter that the debtor signed that lays out her non-fraudulent purposes for creating the land trust and sharing equity in the property in exchange for investment. There is just no way to determine whether she's telling the truth without observing her at trial or at least at deposition. Also, summary judgment was entered before discovery commenced. This is not a situation where the non-moving party dragged its feet. The motion for summary judgment was made just a month after the answer was filed. Meanwhile, the best evidence of the debtor's intent is in her own brain, which can only be accessed by deposition or live testimony. All right. But, Mr. Fernandez, your client was the architect of this whole transaction, if you were. I won't call it a scheme, you know, that the debtor engaged in. Your client sought—Mr. Untemeyer sought her out and said, I can help you, so—and created the whole process, which is now the subject of the fraudulent transfer action. So how can your client say that he needs discovery or is entitled to discovery when he owns all the facts? He was there. Well, two things, Your Honor. The facts are not unavailable, in other words, is what I'm trying to say. Two things, Your Honor. One is those facts are disputed. But two, without the debtor's testimony, it's just her word against his. Mr. Untemeyer can stand all day and say these are the non-fraudulent reasons why we did this for the benefit of the debtor at her instruction. Can I ask you a question? Because I'm looking down at the statute, and I'm hearing what you say, and I think if it required fraudulent intent, but the statute says hinder or delay. Do you have to—is your argument that it isn't enough to simply intend to hinder the debtor or, excuse me, the creditor or delay the creditor, that you have to have some sort of malevolent intent? You do need an intent beyond just the side effect of delaying foreclosure. Debtors delay foreclosure for legitimate reasons all the time, to try to work out, to file a bankruptcy case, to get financing, to sell a property. That incidental intent is not enough to support a fraudulent transfer. And I totally agree with you on filing bankruptcy. Those words have probably come out of my mouth in roughly the same form. But here there was more in the background than simply filing a bankruptcy. We have—don't we have a variety of different acts that sort of take it beyond that benign or just an exercise of legally typically utilized rights? There's only one transaction at issue, and we have to remember the context has to be in the best light for the defendants. The one transaction at issue is transferring the property into a land trust for the purpose of sharing equity. She did not want a bridge loan. She wanted an equity sharing arrangement, and that's how it was effectuated was through this land trust. Okay. So you're saying the land trust, which ended up giving your client 80 percent of ownership in the equity in this property, was her desire, which isn't really in front of us. Right. Okay. Yes, Your Honor, because it created a possibility for her to recover, first, a $235,000 priority distribution before distribution to the beneficiaries. And second, the chance of any recovery at all, 20 percent being her share, having not advanced any new funds. The other investor having advanced new funds would take the larger share. Her alternative at the moment was to lose the property to foreclosure. Okay. Let me go back to your record site you gave us. I'm looking at it now. I hope it's the right thing. It's a letter of June 30, 2020. Isn't that something that your client drafted? The letter is dated June 30, 2020 at the top, but in context, that's a typo. It's signed June 30, 2021, which is the right date. Yes. Yes, Mr. Utenheimer prepared this, but Ms. O'Gorman signed it right under where she says she acknowledges and agrees and says that potential investors can rely on this information. This is actually the only signed document in all of the evidence that was offered in support of summary judgment. At best, the evidence is in equal place. There is an equal amount of evidence in this letter for and against, at best. In reality, I think the debtor's non-fraudulent intent is spelled out in much greater detail here, and her post hoc self-serving disavowal in her declaration is not the strongest evidence that was in the motion. In the face of such conflicting evidence, summary judgment is not possible. There has to be either more discovery or a trial. Did your client offer any evidence in opposition to the summary judgment motion? Your clients, I should say. No, Your Honor, and two things. One, where there is conflicting evidence in the motion and the movement does not carry its burden of showing that there's no undisputed fact and that the movement is entitled to relief as a matter of law, when that happens, the respondent is not required to file anything, any opposition. This is not a work of art, but imagine a scenario where there is no opposition at all, which happens. When that happens, a bankruptcy judge is supposed to slow down and look at the evidence in the motion and determine independently whether there is conflicting evidence and not simply rely on the allegations of the movement, and that's not what happened here. Okay. You have about six and a half minutes left. If you'd like to reserve the rest of the time, you can. If he's got anything else to say now, please go ahead. If there's no further questions, Your Honor, thank you. I'll reserve. Okay. Very good. Mr. Marr. Good morning. May it please the Court. I hesitate to reread my own briefs before because I always find typos, and I found one incorrect citation on page 23 in which I have a quote at the top of the page that I attributed to a Ninth Circuit case. It was actually an Eighth Circuit case. I guess it was wishful thinking on my part. And then I repeated it on page 25. I don't really have anything to add other than I did go through the reply memorandum, and there's quite a bit of distortion and mischaracterization of the answering brief that I filed on behalf of the trustee that I wasn't real happy about. I don't think the trustee made any concessions in the answering brief, which is totally contrary to the statement of quote-unquote facts and the argument that was made by the appellants. I'm happy to answer any questions. Well, I'd like you to address the issue raised by Mr. Fernandez, which is that there's internal inconsistencies in the debtor's testimony on the motion that precludes summary judgment. I don't think there is inconsistency. And the debtor clearly stated that she wanted to delay the foreclosure in her declaration, and the documents that have been produced, the two letters, one in 2020 and one in 2021, aren't inconsistent with her testimony in her declaration. It was the letter that he talks about in front of the court or in the record in front of the court at the time of the summary judgment hearing. Yes, it was. It was attached to Ms. O'Gorman's declaration. And the bankruptcy court found that the trustee had made his case in chief, and therefore it was incumbent on the defendants to come up with contradictory evidence, and the defendants didn't do that. And the defendants totally fell flat on the 50-60 request. I mean, of all the people in the world who knew what was going on, it was Mr. Utnemer, and he failed to file anything. And the bankruptcy court, the standard of review on that decision is abuse of discretion. On the 50-60? 50-60. Right. We haven't even really discussed that. I want to go back to really hitting home on this idea of hinder, delay, or defraud. And I agree with Appellate's counsel that there are many things that we do to hinder or delay that aren't fraudulent, you know, don't result in set-aside. They usually, though, aren't transfers. Correct. So, talk to me a little bit about how you fit the sort of nefarious state of mind that I think he's implying is required into a case where, let's assume she's pure as the driven snow. She didn't intend to defraud anyone. It's a hinder or delay case. What state of mind do we have to find? Or did the bankruptcy court have to find? I think the bankruptcy court just had to find that this is what she made the transfer with the intention of delaying the foreclosure. She could have had an empty head in an involuntary fraudulent transfer. So, if she needs no intent, well, then I'd be under B. But I don't think you need nefarious intent. You just need to want to delay it. Filing a bankruptcy is not a transfer. Right. And that would be your point or your response to him. That's the difference between saying there are many things we do to delay or to hinder, but they don't involve transfers. Correct. I mean, workout discussions are not transfers. Any more questions? No. Thank you very much. Thank you. All right. Mr. Fernandez, you've got, I think, about a little over six minutes. Yes. Yes. Go ahead, please. Four things, Your Honor. First, just to clarify, contrary to what Mr. Marr said, there are not two letters. There's just one. Second, the bankruptcy court did not make findings of fact, did not sit down and say that the appellee had made a case in chief. The judgment is half a page. The order is half a page. The hearing lasted six minutes. All the judge said was, I see that the elements are laid out. There is no opposition. There is no evidence in opposition. Case closed. Third point, what would a declaration have said? Would it have said, well, we're going to put the debtor on the stand and test her intent? Well, that's not really evidence. I mean, in the form of a declaration or in the form of an opposition. It was in the opposition, but it did not have a declaration attached. There's nothing that a non-moving party can do to authenticate what's in the moving party's head. It's such an unusual case, though, because I always say you can't get a summary judgment on a fraud case because nobody's going to come in and say I intended to defraud them. Yet that's what we appear to have here is that unusual case where the party whose intent matters says, yeah, I did this with the intent to do these things, which bring it under the statute. So you're right. I suppose you could take the woman in, and it's almost a bizarre hearing because you'd be saying, no, you intended to be just a great person, and you had no intent to hinder or delay them, right? And she'd go, no, I wanted to hinder or delay them. You know, I'm struggling with the tactics. But it's also, I mean, Mr. Utnehmer represented her, advised her, presumably talked to her and consulted with her. He must have had conversations with her that he could recount that might have had contradictory information. And then going to the 56D point, he needed to say what he wanted to do in discovery, and he didn't even say I wanted to pose Ms. O'Gorman. Well, to answer Judge Taylor's question first, that's exactly the heart of the problem here. The only place where Ms. O'Gorman says she intended to hinder, delay, and defraud creditors, and she doesn't quite come out and say it, by the way, but the only point where she almost says it is in the declaration prepared by the trustee. And I could very easily imagine sitting her down for a deposition and hearing her say, no, I never intended to defraud anyone. I never intended to delay anyone. To answer Judge Ferris's question, this is not, the opposition is not a work of art. It would have been better if it had a declaration attached. But that kind of procedural footfall is not how summary judgment motions are won or lost. That is something that could have easily been cured by a short continuance. Was one requested? Yes. Okay. Final point, Your Honor. The notion of hindering or delaying Mr. Reynolds, the secured creditor, is a little bit awkward because his lien is still attached to the property. He wasn't slowed down at all. In fact, after the transfer, he foreclosed twice. He did it once. There was a technical defect. He did it again, post-petition, by the way. He's also vastly over-secured, and those are based on the undisputed facts of the case and parts of the record that were before Judge Aframski, that were available to Judge Aframski. It's very difficult for me to see how he could have been delayed in any significant way, especially since, under the facts, he actually wasn't. He actually went forward and foreclosed. Do you have to have damages to have it be an actual fraudulent transfer, she says, having been reversed on this point? In a decision I wrote. The only time I've ever been reversed. Let's just put that out there. So you can answer. Yes, Your Honor, and it's not such a matter of damages. It's a factor. But isn't intent the factor? That's the same thing. I mean, you don't – isn't it kind of the same metric? If you do it with intent to hinder, but you're not successful, maybe the action never gets brought because the logical person to bring it, you know, doesn't have the need for it, but where bankruptcy intervenes and there is a logical need, does it matter that you didn't hinder that creditor if you intended to? Well, if that were the case, Your Honor, but it's not. This transaction wasn't concealed. It was documented. There was no plan to actually slow Mr. Reynolds down. The fact that it did not slow him down is just another factor. Well, you say there was no plan, but what was the evidence of that? Again, your client could have put in that evidence. She'd waived the privilege. Daniel, it's not as though he can't say that was – as her lawyer, I can say that wasn't the intent of this transfer. Again, Your Honor, the opposition is not a work of art, but we've got to understand that bad cases can make bad law. And the next one – And we all understand that there is, you know, failure to oppose a summary judgment and, you know, granting it just on that basis is potentially error, no question about it. But it would have been better. Okay. I think we're past your time, so thank you very much for the arguments on both sides. The matter is submitted. Thank you, Your Honors. Thank you.
judges: FARIS, TAYLOR, BRAND